LINDSAY, Judge.
This is an action concerning the custody of two children, C.B. and T.H. We affirm the juvenile court judgment placing the custody of C.B. and T.H. with the State, Through the Department of Social Services, and confirming the State’s placement of physical custody of the children with the maternal grandparents.
FACTS
C.B. was born December 11, 1983 and is the illegitimate daughter of S.H. S.H., now approximately 21 years old, married R.H. on January 29, 1985. On May 26, 1986, T.H. was born of this union. In August, 1986, C.B. began telling relatives that her stepfather, R.H., burned her with cigarettes, pulled her hair, put hot sauce in her eyes, dipped her feet in hot water and sexually abused her. At one point, C.B. suffered a dislocated elbow. Her mother and stepfather could offer no explanation for this injury.
In addition to the statements made by C.B. about her abuse, the maternal grandparents also observed that T.H. had suspected cigarette burn marks on her legs.
These instances of suspected abuse were reported to the Department of Social Services on December 4, 1987. The Department refused to reveal the identity of the person who made the record. However, the record was investigated. Based upon this investigation, the State filed a verified complaint alleging that the children had been abused and that they were children in need of care. On December 10, 1987, pursuant to a juvenile court order, C.B. and T.H. were removed from the custody of S.H. and R.H. At the time, both children were placed in the actual custody of the maternal grandparents.
On January 12, 1988, the State, through the Department of Social Services, filed a petition to have the children adjudicated in need of care. The maternal grandparents of the children filed a petition of intervention, seeking to be designated the domiciliary custodians of the children.
A hearing was conducted in the juvenile court on February 19, 1988 and March 28, 1988. On March 28, 1988, based upon the evidence adduced at the hearing, the juvenile court found that the State had shown by a preponderance of the evidence that both children were at risk with S.H. and R.H. Therefore, the court adjudicated the children to be in need of care. The court then ordered that psychological evaluations be performed on the children and the adults involved. Domiciliary custody of the children was placed with the maternal grandparents, pending a dispositional hearing.
In August, 1989, a dispositional hearing was held. The paternal grandparents of T.H. appeared and also sought the domiciliary custody of the children. They were *906 represented by counsel at the dispositional hearing, but the record does not reflect that a petition of intervention was ever filed on their behalf nor does it appear that counsel formally enrolled to represent these parties.
Evidence was adduced at the dispositional hearing. At the conclusion of the hearing, the court rendered an oral opinion in open court, finding the children to be in need of care.
The juvenile court noted that S.H. and R.H. had not sought therapy or taken any action to address the problems which resulted in the removal of these children from their custody. The court found that returning the children to S.H. and R.H. would pose an unreasonable risk to the children. The court noted that there was a great deal of animosity between the grandparents. The court also observed that the paternal grandparents were living in the state of Texas. The court found that placing custody of the children with these grandparents would cause the State of Louisiana to be at a disadvantage in carrying out its responsibility to supervise the placement of the children. The court reasoned that by placing the children with the maternal grandparents, the State would be better able to supervise the treatment and counseling of the parents and the placement of the children.
The court found that the children had been living with the maternal grandparents since this litigation began. The court found that the children were bonded to them, and to take them away at this point would simply cause additional trauma.
Based upon all these factors, the juvenile court found that the children continued to be in need of care. The court found that it was in the best interest of the children to continue custody in the Department of Social Services of the State of Louisiana with authority to place the children in the physical care of the maternal grandparents.
Accordingly, on October 4, 1989, formal judgments were signed by the -juvenile court holding that T.H. and C.B. continue to be children in need of care and custody of the children was continued in the State of Louisiana. The State’s action in placing the children with the maternal grandparents was confirmed.
The parents, S.H. and R.H., have appealed the juvenile court judgment, arguing the court erred in finding that T.H. and C.B. were in need of care. They also contend that authorizing the State to place custody of the children with the maternal grandparents was not in the best interest of the children.
CHILDREN IN NEED OF CARE
The parents, S.H. and R.H., argue that the trial court erred in finding that the children, C.B. and T.H., were in need of care. This argument is meritless.
LSA-C.J.P. Art. 13(14)(a) defines “child in need of care” as a child:
(a) Whose parent inflicts, attempts to inflict, or, as a result of inadequate supervision, allows the infliction or attempted infliction of physical injury or sexual abuse upon the child which seriously endangers the physical, mental or emotional health of the child.
A juvenile court determination as to whether a child is in need of care is obtained by filing a petition alleging that the child is in need of care, and holding an adjudication hearing. LSA-C.J.P. Art. 45-72.
If a petition requests that the child be adjudicated a child in need of supervision or a child in need of care, the state shall prove the allegations of the petition by a preponderance of the evidence. LSA-C. J.P. Art. 73. Proof is sufficient to constitute a preponderance when the evidence, taken as a whole, shows that the existence of the facts sought to be proven are more probable than not. Duncan v. Department of Public Safety, 468 So.2d 797 (La.App. 1st Cir.1985).
In the present case, the record supports the trial court finding that C.B. and T.H. were children in need of care. In August, 1986, C.B. began telling her maternal grandparents, as well as an aunt, a great aunt and a cousin, that her stepfather, R.H., had physically and sexually abused *907 her. C.B. had numerous marks on her legs and feet which were suspected cigarette burns. The maternal grandmother also noted that C.B. had some swelling and redness in her genital area at the time these complaints were made.
T.H. had circular marks on her legs and feet which were suspected to be cigarette burns. ST.H. also had a linear burn on her leg which was determined to be caused by accidental contact with an electric heater.
A complaint was made to the State on December 4, 1987. This complaint was investigated by Mr. Doug Hubbart, a social worker with the Department of Health and Human Resources, who testified at the hearing to determine if the children were in need of care. Mr. Hubbard interviewed S.H. and R.H., the maternal grandparents, and other family members to whom C.B. had made allegations of abuse against R.H.
As a part of the investigation of the complaint, the children were examined by Dr. Robert L. Savory. Dr. Savory determined that the numerous circular burns on the children were most probably cigarette burns. C.B. told Dr. Savory that the marks were caused when R.H. burned her. T.H. was 18 months old at the time of the examination and was not able to relate what had happened to her.
C.B. was also examined by Dr. Donita Gothard, a psychologist. C.B. related instances of both physical and sexual abuse to Dr. Gothard. Additionally, C.B. was examined by Ms. Kay Meyers, an employee of the Department of Health and Human Resources. Ms. Meyers interviewed C.B. with anatomically correct dolls and testified that during the interview, C.B. demonstrated that she had been sexually abused.
Dr. Susan Vigen, an expert in child psychology evaluated the children pursuant to an order from the juvenile court, prior to the disposition hearing. At the disposition hearing, Dr. Vigen testified that “something” in the way of abuse had happened between R.H. and C.B. Dr. Vigen felt that C.B. was truthful in her statements concerning abuse and that C.B. had not been coached in responding to her questions concerning the alleged abuse. She also testified that C.B. was hostile to R.H. and her mother, S.H. The child was in therapy with Dr. Vigen.
Dr. Vigen testified that at the time of her examination, T.H. was not hostile toward R.H. and S.H. Therefore, T.H., at some point, might be reunited with her parents although Dr. Vigen did not recommend that such action be taken at this time. Dr. Vigen testified that C.B. would probably never be able to live with S.H. and R.H.
Based upon the facts outlined above, and the evidence presented at the hearings conducted in the juvenile court, we conclude that the court was correct in adjudicating these children to be in need of care and we affirm the judgment.
CUSTODY OF THE CHILDREN
The parents, S.H. and R.H., argue that the juvenile court erred in placing the custody of C.B. and T.H. with the State and authorizing the State to grant physical custody of the children to the maternal grandparents. This argument is meritless.
LSA-C.J.P. Art. 85 provides:
A. In a case in which a child has been adjudicated in need of care, the court may:
(1) Place the child in the custody of a parent or such other suitable person on such terms and conditions as deemed in the best interest of the child;
(2) Place the child in the custody of a private or public institution or agency;
(3) Commit a child found to be mentally defective to a public or private mental institution or institution for the mentally defective; or
(4) Make such other disposition or combination of the above dispositions as the court deems to be in the best interest of the child....
LSA-C.J.P. Art. 86 provides in pertinent part:
A. The court shall impose the least restrictive disposition which the court finds is consistent with the circumstances of the case, the needs of the child, and the best interest of society. The court *908 shall not remove a child from the custody of his parents unless his welfare or the safety and protection of the public cannot, in the opinion of the court, be adequately safeguarded without such removal.
Once a court has adjudicated a child in need of care, it may place the child in the custody of a parent or such other suitable person or agency, public or private, on such terms and conditions as deemed in the best interest of the child. State in the Interest of Two Minor Children, 499 So.2d 697 (La.App. 3rd Cir.1986), State in the Interest of Weaver, 430 So.2d 324 (La.App. 3rd Cir.1983).
The court’s determination in custody cases is entitled to great weight and will not be reversed on appeal except upon a showing of abuse of discretion. State in the Interest of Weaver, supra.
In the present case, the record supports the juvenile court award of custody to the state, and the court’s confirmation of the authority of the state to place the domiciliary custody of the children with the maternal grandparents. See LSA-R.S. 13:1580. Both children have been residing with these grandparents since their removal from parental custody in 1987. The juvenile court found that separating the children would be traumatic for them. The state recommended to the court that the actual custody of the children be placed with the maternal grandparents.
The record shows that although Dr. Susan Vigen testified that placement of T.H. with her paternal grandparents would be a viable option, the court determined that it was in the best interest of the child to allow her to remain with her sister in the home of the maternal grandparents. The court had before it all the parties and weighed all the evidence presented. Our review of the record reveals that the juvenile court did not abuse its discretion in the placement of these children. Therefore, we affirm the juvenile court judgment.[1]
CONCLUSION
For the reasons stated above, the judgment of the juvenile court, finding the minors, C.B. and T.H., to be children in need of care is affirmed. The judgment placing the custody of the children with the State, through the Department of Social Services and authorizing the State to place actual custody with the maternal grandparents is likewise affirmed. Costs are assessed to appellants.
AFFIRMED.

. We note that counsel for the paternal grandparents filed a brief on their behalf in these appellate proceedings. In that brief, counsel states that "although designated as appellee in the instant appeal, the paternal grandparents ... show that the trial court’s placement of the minor children with [the maternal grandparents] was in error and should be overturned.” However, the paternal grandparents have neither appealed the juvenile court judgment nor have they answered the appeal. Therefore, under LSA-C.C.P. Art. 2133, they may not demand modification, revision or reversal of the juvenile court judgment.